TEMPLIN ET AL. v. THE CHICAGO, BURLINGTON & PACIFIC R'Y CO. ET AL.

1. **Mechanic's Lien:** NO CONTRACT WITH OWNER, NOR COMPLIANCE WITH STATUTE AS TO SUBCONTRACTORS. Action to establish and foreclose an alleged mechanic's lien for work done upon a railroad. But it appearing that the company with which plaintiffs contracted had sold and conveyed the road to another company prior to the making of the contract, *held* that they could not recover as against such other company on the ground that they were principal contractors; and that they could not recover as subcontractors, because they had not complied with the statute in relation to subcontractors, and had not framed their suit on that theory.

2. ———: CONTRACTORS AND SUBCONTRACTORS: WHO ARE. Where one company sold and conveyed an unfinished railroad to another company, and bound itself to complete the road, *held* that the first company became a principal contractor with the second one, and that persons contracting with the first company to do the work were subcontractors only.

3. **Railroads:** AUTHORITY OF PRESIDENT OF COMPANY. The president of a railroad company has no power, by virtue of his office simply, to let a contract in behalf of the company for the construction of its road, when the same is already under contract by the board of directors.

*Appeal from Henry Circuit Court*—HON. W. J. JEFFRIES, Judge.

SATURDAY, DECEMBER 17.

ACTION in equity to establish and foreclose an alleged mechanic's lien. There was a decree for the plaintiffs. The defendants appeal.

*R. Ambler, J. H. Blair* and *A. C. Daly*, for appellants.

*Woolson & Babb*, for appellees.

ADAMS, CH. J.—The plaintiffs performed labor in laying a part of a track, and in doing other work, on a certain rail-road in Iowa. They received payment in part, and bring this action to recover of the defendant the Chicago, Burlington & Pacific Railroad Company for an alleged balance, and to establish the same as a lien upon the road. The parties

**1. MECHANIC'S lien: no contract with owner, nor compliance with statute as to subcontractors.**

are not agreed as to who contracted with the plaintiffs to do the work, nor as to who owned the road at the time, nor as to who received the benefit of the work. The plaintiffs claim that the road was owned by the defendant the Chicago, Burlington & Pacific Railroad Company, and that that company contracted with them to do the work in question, and received the benefit of the work. The company, in its answer, denies all three of these propositions. Its counsel, in their argument, contend that the evidence shows that the road was owned by the defendant the Central Iowa Railway Company, and that the work in question was done for the Trunk Line Construction Company, a corporation organized under the laws of Connecticut, and engaged in constructing railroads. The construction company is not made a defendant.

It is conceded that the road was owned at one time by the defendant, the Chicago, Burlington & Pacific Railroad Company; but we think that the evidence shows that, before the contract sued upon was entered into, that company had sold and conveyed the road by a duly-recorded deed to the defendant, the Central Iowa Railway Company. The court decreed a mechanic's lien against the latter company, but there is no pretense that the plaintiffs had any contract with that company. The contract not having been made with the company then owning the road, the plaintiffs could not acquire a lien as against that company, unless they were subcontractors. But the action is not brought upon that theory, nor is there any pretense that the requisite steps were taken to establish a subcontractor's lien. The plaintiffs' claim is that they

were original contractors, by virtue of a contract with the
Chicago, Burlington and Pacific Railroad Com-
pany, and that they are entitled to a lien notwith-
standing the fact that that company had already
sold and conveyed its road before their contract was entered
into. At the time of the sale of the road it was only par-
tially constructed, and the seller, the Chicago, Burlington &
Pacific Railroad Company, entered into a contract with the
purchaser, binding itself to construct the remainder; and it
is contended by the plaintiffs that the seller agreed to com-
plete the road for the consideration agreed upon in the sale.
But such fact would not give the plaintiffs a contract with
the owner of the road; and it is only under a contract with
the owner that the plaintiffs, under the statute, can be
allowed a lien as original contractors. It was the Central
Iowa Railway Company's right to proceed and settle for the
road with the only party with whom it had contracted, unless
labor and materials had been furnished under a subcontract,
and the requisite steps had been taken to obtain a subcon-
tractor's lien. If, after the sale and conveyance, the Chi-
cago, Burlington and Pacific Railroad Company was under
contract to complete the road, its relation to the road was
substantially the same as if it had never owned it. The
company was virtually a contractor; and persons working
under it, by contract made subsequent to the sale, were
virtually subcontractors. To acquire a lien, the persons
thus working should bring themselves within the statute
providing for subcontractors.

The defendants contend that the plaintiffs did not have a
contract even with the company which once owned the road,
but that their work was performed for the Trunk
Line Construction Company, and that they have
been paid for their work by that company, so far
as they have been paid at all. The plaintiffs base their claim
upon an alleged written contract, and that contract purports
to be signed by one S. C. Cook, who was at the time the

*Margin notes: 2. ———: contractors and subcontractors: who are. 3. RAILROADS: authority of president of company.*

president of the Chicago, Burlington & Pacific Railroad Company, and the contract purports to bind that company. It is undisputed, however, that the company had at the time a contract with the Trunk Line Construction Company to do all the work in the construction of the road, including the work in question, and that the railroad company paid, or arranged for the payment of, the construction company for the same. If the Chicago, Burlington & Pacific Railroad Company must pay the plaintiffs for the work, it must pay for it twice. The evidence shows that, at the time the plaintiffs' contract was made, Cook was not only president of the railroad company, but superintendent of a part of the work for the construction company. As such superintendent, he had occasion to employ some one to lay the rails and do some other work. He accordingly employed the plaintiffs. For some reason, however, not very apparent from the evidence, he executed the written contract in the name of the railroad company, by himself, as president. He undoubtedly thought that the construction company would pay promptly for the work according to the contract, and that no one would be injured; and we surmise that he was led into his irregular action by the supposition that the plaintiffs would prefer a contract with the railroad company. But it is not important to inquire how the irregularity occurred; the important question is as to whether the railroad company is bound by Cook's action. It is shown by undisputed evidence that Cook had no express authority to make such a contract in behalf of the company. Witnesses so testify, and there was no evidence, by introduction of the articles of incorporation or otherwise, tending to show to the contrary. There is no evidence that he had been accustomed to make such contracts in behalf of the company from which his authority could be inferred. He had not been held out by the company in any way particularly, and the plaintiffs were not justified in inferring that he had larger powers than those which he actually possessed; nor do we understand the plaintiffs as

contending that he had been so held out. Their contention is, as we understand them, that he had such power simply by virtue of his office as president, and without any express provision therefor in the articles of incorporation, or authorization by the board of directors.

We have, then, the question, has the president of a railroad company the power, by virtue of his office simply, to let a contract in behalf of the company for the construction of its road, when the same is already under contract by the board of directors? No authority has been cited which so holds, and we conclude that such is not the law. In Taylor on Corporations, § 236, the author says: " *Virtute officii*, a president has very little authority to act for his corporation, and can bind it only by such contracts as plainly come within its most ordinary routine of business;" citing *First Nat. Bank of Allentown v. Hock*, 89 Pa. St., 324; *Blen v. Water & Mining Co.*, 20 Cal., 602; *Risley v. Indianapolis B. & W. R'y Co.*, 1 Hun., 202. In *Adriance v. Roome*, 52 Barb., 399, it was held that the officers of a corporation are special, and not general, agents; that there is no grant of power in the name by which they are designated; that they have no power to bind the corporation, except within the limits prescribed by the charter and by-laws; and that persons dealing with such officers are charged with notice of the authority conferred upon them, and of the limitations and restrictions upon it contained in the charter and by-laws.

In our opinion the decree must be

REVERSED.